IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**HYC LOGISTICS, INC.,**

    Plaintiff,

vs.                                                Civil Action No. 2:24-cv-02191-TLP-atc

**LOUISE PARIS LTD.,**
**JOSEPH BARNATHAN,**
**SOLOMON BARNATHAN, and**
**ABRAHAM BARNATHAN,**

    Defendants.

## DEFENDANTS' JOSEPH BARNATHAN, SOLOMON BARNATHAN, AND ABRAHAM BARNATHAN MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

**COME NOW**, Defendants Joseph Barnathan, Solomon Barnathan, and Abraham Barnathan ("Barnathan Defendants"), by and through counsel of record, pursuant to Federal Rule of Civil Procedure 12, and hereby submit their Memorandum of Law in Support of their Motion for Judgment on the Pleadings, and would state as follows.

### Factual Background

As set out in Plaintiff HYC Logistics, Inc.'s ("Plaintiff") Verified Complaint for Damages and Declaratory Relief [ECF No.1] ("Complaint"), this action arises out of a contractual dispute between Plaintiff and Defendant Louise Paris Ltd. ("LP"). In pertinent part, Plaintiff's Complaint alleges the following:

> 17. In or about November 2022, LP contacted HYC about providing freight forwarding and customs brokering services relative to particular good LP planned to purchase and transport from a manufacturer in China.

18. To that end, LP entered into a NCBFAA Terns and Conditions of Service with HYC dated November 15, 2022 (hereafter, the "Contract").

* * *

21. The Contract was signed by Defendant J. Barnathan on behalf of LP.

22. Upon information and belief, the Barnathan Defendants are the majority, if not exclusive, owners of LP and both control and operate LP.

23. Each of the Barnathan Defendants is an officer, director, or executive with LP.

24. According to the New York Secretary of State Division of Corporations, S. Barnathan purports to be LP's Vice President.

25. The Barnathan Defendants each derive a substantial and direct financial benefit from LP's business operations.

* * *

74. On December 26, 2023, J. Barnathan, on behalf of LP, agreed to enter into a Settlement Agreement acknowledging the debts and agreeing to pay HYC, the then remaining sum total of $1,238,288.00, in monthly installment payments from January 2024 through March 2024.

75. As part of the Settlement Agreement, HYC required, and each of the Barnathan Defendants agreed to be, guarantors for the repayment obligation, jointly and severally.

76. In exchange for LP making the payments proscribed [sic] in the Settlement Agreement, HYC agreed to forebear on taking legal action against LP and availing itself of any of its rights or remedies under the Contract, the Indemnity, at law, or otherwise.

77. The agreement between HYC, LP, and the Barnathan Defendants is memorialized in the Settlement Agreement negotiated between the parties.

78. On December 26, 2023, Defendant J. Barnathan held a conference call with HYC and its legal counsel wherein he agreed to liability for the debt, agreed to sign the Settlement Agreement and to timely make the payments required thereunder.

79. On December 29, 2023, counsel for LP emailed HYC stating that the Settlement Agreement was signed by LP and that LP and the Barnathan Defendants agreed to perform thereunder.

<pre>                                  * * *
       92.    HYC, LP, and the Barnathan Defendants entered into the Settlement
Agreement and are bound by its terms.
</pre>

<pre>                                  * * *
       96.    The Barnathan Defendants failed to perform under the Settlement
Agreement.
</pre>

<u>Compl.</u>, Mar. 26, 2024, at ¶¶ 17, 18, 21–25, 74–79, 92, 96 [ECF No. 1].

The "Settlement Agreement" Plaintiff contends binds the Barnathan Defendants is attached to the Complaint as Exhibit D. [ECF No. 1-5]. This written Settlement Agreement was proposed by Plaintiff, and evident from the face of the Settlement Agreement, neither LP nor the Barnathan Defendants executed the Agreement and personal guaranties respectively. [ECF No. 1-5]. By including the Barnathan Defendants in the definition of "Parties" to the Settlement Agreement, that Agreement incorrectly recites that Plaintiff, LP, **and** the Barnathan Defendants "entered into certain Services and Indemnity Agreements relating to services provided by HYC and LP for which LP was obligated to timely remit payment." [ECF No. 1-5]. However, the NCBFAA Terms & Conditions of Service Agreement attached to Plaintiff's Complaint as Exhibit A [ECF No. 1-2] and the Indemnification Agreement attached to Plaintiff's Complaint as Exhibit B [ECF No. 1-3] make clear that the Barnathan Defendants were never parties to any "certain service and indemnity agreements" with Plaintiff.

In their Amended Answer, the Barnathan Defendants denied they are personally liable for any debts alleged by Plaintiff. [ECF No. 15]. The Barnathan Defendants further asserted the affirmative defense of Tennessee's statute of frauds, as Plaintiff's guaranty claims against the Barnathan Defendants arise from an agreement that was never executed. *Id.*

The Barnathan Defendants' instant Motion followed.

## Legal Standard

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12. "The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Procedure 12(b)(6)." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

As this Court has explained:

> A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's allegations by arguing the allegations establish no claim for which relief can be granted. To test the sufficiency of the complaint, the Court also looks to Rule 8. Under Federal Rule of Civil Procedure 8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2013) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).
>
> A court considering a motion to dismiss under Rule 12(b)(6) must "construe the complaint in the light most favorable to the plaintiff, accept all allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court need not accept as true all legal conclusions or unwarranted factual inferences. *Hananiya v. City of Memphis*, 252 F. Supp. 2d. 607, 610 (W.D. Tenn. 2003) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.
>
> In sum, "[t]o withstand a Rule 12(c) motion for judgment on the pleadings, 'a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Commercial Money Ctr., Inc.*, 508 F.3d 327, 336 (6th Cir. 2007)). Put another way, "[t]he Court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) is based upon whether the claimant is entitled to offer evidence to support the claims, not whether the plaintiff can ultimately prove the facts alleged." *Time & Sec. Mgmt., Inc. v. Pittway Corp.*, 422 F. Supp. 2d 907, 910 (W.D. Tenn. 2006) (citations and internal quotation marks omitted).

*Pleasant-Bey v. Shelby Cnty. Gov't*, No. 2:17-CV-02502-TLP-TMP, 2019 WL 5654993, at *2 (W.D. Tenn. Oct. 31, 2019).

## Law and Argument

### A. Tennessee's statute of frauds renders the alleged personal guaranties by the Barnathan Defendants voidable at the Barnathan Defendants' election.

Count I of Plaintiff's Complaint must fail under Tennessee law as the Settlement Agreement and Personal Guaranty Plaintiff relies upon is subject to and does not satisfy the statute of frauds. No writing signed by the party to be charged—here, the Barnathan Defendants—exists.

Tennessee's applicable statute of frauds provides:

> No action shall be brought: . . . [t]o charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn. Code Ann. § 29-2-101(a)(2).

The Tennessee Court of Appeals summarizes the rationale for the statute of frauds:

> The primary purpose of the Statute of Frauds is to reduce the risk of fraud and perjury associated with oral testimony. By requiring certain transactions to be in writing, the statute also helps to prevent the proof of verbal agreements after the memory of witnesses has been dimmed by lapse of time. Although a written contract is not necessary to satisfy the Statute of Frauds, a written memorandum or note evidencing the parties' agreement is required.

*Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 474 (Tenn. Ct. App. 2016).

> The general rule is that the memorandum, in order to satisfy the statute, must contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected, without resorting to parol evidence.

*Lambert v. Home Fed. Sav. & Loan Ass'n*, 481 S.W.2d 770, 773 (Tenn. 1972) (quoting 49 Am. Jur. Statute of Frauds §§ 353, 363–64) (emphasis added).

As a threshold matter, the personal guaranty in the Settlement Agreement is a contract subject to the statute of frauds, as it purports to charge the Barnathan Defendants for the alleged debt or default of LP. *See* Tenn. Code Ann. § 29-2-101(a)(5). Accordingly, to be enforceable and not voidable, the Barnathan Defendants' personal obligations must be set forth in a writing that is signed by the Barnathan Defendants.

The ill-fated lynchpin of Plaintiff's theory that the Barnathan Defendants are personally liable as guarantors of LP's obligations appears in paragraphs 77–79 of the Complaint:

> 77. The agreement between HYC, LP, and the Barnathan Defendants is memorialized in the Settlement Agreement negotiated between the parties.
>
> 78. On December 26, 2023, Defendant J. Barnathan held a conference call with HYC and its legal counsel wherein he agreed to liability for the debt, agreed to sign the Settlement Agreement and to timely make the payments required thereunder.
>
> 79. On December 29, 2023, counsel for LP emailed HYC stating that the Settlement Agreement was signed by LP and that LP and the Barnathan Defendants agreed to perform thereunder.

[ECF No. 1]. Based upon these facts, Count I of the Complaint concludes that "[Plaintiff], LP, and the Barnathan Defendants entered in the Settlement Agreement and are bound by its terms," and "The Barnathan Defendants failed to perform under the Settlement Agreement." [ECF No. 1].

Consistent with the plain language of Tennessee's statute of frauds, the alleged ***oral*** agreement referenced in paragraph 78 of the Complaint cannot form the basis of an enforceable personal guaranty by the Barnathan Defendants. Axiomatically, the unsigned Settlement Agreement does not satisfy the statute of frauds because it is not signed by the Barnathan Defendants.

Nor does the Complaint even assert that the Barnathan Defendants ever signed the Settlement Agreement; all the Complaint alleges is that Plaintiff was told "the Settlement

6

Agreement was signed by LP." [ECF No. 1]. This allegation is distinguishable from an allegation that LP actually signed the Settlement Agreement (rather than an admission that Plaintiff was told second-hand that the Agreement was signed). Simply, this allegation is as close as Plaintiff comes to pleading that all the Barnathan Defendants signed the Settlement Agreement, and even still, it does establish a plausible claim for the relief sought. *See* Fed. R. Civ. P. 12(c).

Moreover, the Complaint neglects to even suggest how Solomon Barnathan or Abraham Barnathan allegedly assented to the Agreement; the Complaint only mentions that "J[oseph] Barnathan, **on behalf of** LP, agreed" to enter the alleged Settlement Agreement. [ECF No. 1] (emphasis added). The Complaint also states, "each of the Barnathan Defendants agreed to be guarantors," [ECF NO. 1], but this is purely a legal conclusion that fails to state any facts that could plausibly indicate the Barnathan Defendants are personally obligated under this unsigned Settlement Agreement.

Further, even if it were true that "the Settlement Agreement was signed by LP," LP's alleged assent to the Settlement Agreement is immaterial to whether the Barnathan Defendants (i.e. different parties) agreed to be bound to personal guaranties (i.e. different contractual obligations). Whether LP agreed to the Settlement Agreement does not make the Barnathan Defendants' alleged liability under the personal guaranty more or less plausible under Federal Rule 12(c).

In sum, the Barnathan Defendants never signed any writing that would allow Plaintiff to evade the requirement under the Tennessee statute of frauds that personal guaranties be in writing and signed by the Barnathan Defendants. Therefore, Count I of Plaintiff's Complaint against the Barnathan Defendants fails to state a plausible claim for relief, and this Court should grant judgment in their favor under Federal Rule 12(c).

### B. Count II of the Complaint fails to plead a plausible claim for fraud, fraudulent inducement, and misrepresentation against the Barnathan Defendants.

Plaintiff's conclusory allegations related to the Barnathan Defendants' personal liability do survive scrutiny under Federal Rule 12(c) as Plaintiff has failed to plead with requisite particularity its claims for fraud, fraudulent inducement, and negligent and intentional misrepresentation.[1]

Federal Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). " Rule 9(b) imposes a heightened pleading requirement for claims alleging fraud." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021).

For Plaintiff's Complaint to give rise to a plausible inference that the Barnathan Defendants committed intentional misrepresentation, the Complaint must allege:

> (1) Defendants made an intentional misrepresentation of a material fact; (2) Defendants made the representation "knowingly" without belief in its truth, or "recklessly" without regard to whether it was true or false; (3) Plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact.

*Brown v. Woodbury Auto Grp. LLC*, 591 F. Supp. 3d 282, 294 (M.D. Tenn. 2022).

The Complaint fails to plead particular facts to allow this Court to plausibly infer that the Barnathan Defendants should be personally liable for intentional misrepresentation in this case. Throughout the Facts section, Plaintiff's Complaint repeatedly concedes the Barnathan Defendants were acting on behalf of LP:

> 21. The [NCBFAA Terms and Conditions of Service] Contract was signed by Defendant J. Barnathan ***on behalf of LP***.
> \* \* \*

---

[1] "In Tennessee, fraud, intentional misrepresentation, and fraudulent misrepresentation comprise the same tort, which is typically referred to as intentional misrepresentation." *Brown v. Woodbury Auto Grp. LLC*, 591 F. Supp. 3d 282, 294 (M.D. Tenn. 2022).

> 55. LP—*by and through the Barnathan Defendants*—represented to HYC that LP was not in a financial position to satisfy the debt [to a Chinese manufacturer] outright.
>
> * * *
>
> 74. On December 26, 2023, J. Barnathan, *on behalf of LP*, agreed to enter into a Settlement Agreement acknowledging the debts and agreeing to pay HYC, the then remaining sum total of $1,238,288.00, in monthly installment payments from January 2024 through March 2024.
>
> * * *
>
> 108. LP, *by and through the Barnathans*, represented to HYC that LP had the ability to pay for the services to be rendered under the initial Contract.

[ECF No. 1] (emphasis added).

Each allegation related to some representation or indication made to Plaintiff relates exclusively to LP—not any of the Barnathan Defendants. LP is a corporate entity; it cannot but act through natural people. It did so, as Plaintiff has alleged.

On the other hand, however, Plaintiff's Complaint is devoid of any alleged fact regarding the Barnathan Defendants, *in their individual capacity*, knowingly or recklessly making any misrepresentation of a material fact that was justifiably relied upon by Plaintiff. All Plaintiff's Complaint alleges about the Barnathan Defendants is "LP, and the Barnathan Defendants—both individually and collectively—made repeated representations to HYC in order to induce HYC to act." [ECF No. 1].

Far from the heightened pleading standards necessary to establish fraud and misrepresentation, Plaintiff's Complaint fails to state a plausible claim against the Barnathan Defendants individually, and this Court should grant judgment on the pleadings in their favor on Count II of the Complaint.

### C. Plaintiff has not pleaded a plausible claim for equitable relief against the Barnathan Defendants to pierce the corporate veil under Count V or for quantum meruit under Count III.

The Barnathan Defendants should be granted judgment on Plaintiff's meager veil-piercing allegations. The Sixth Circuit has recognized that "the principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity." *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675 (6th Cir. 2006). To overcome this presumption that the Barnathan Defendants have zero personal liability for LP's alleged liabilities, Plaintiff must establish or, at the very least, allege the following three elements from the Tennessee Supreme Court:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
>
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979). "The doctrine of piercing the corporate veil applies equally to cases in which a party seeks to pierce the veil of a limited liability company." *Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012).

The totality of Plaintiff's veil-piercing allegations amounts to the following:

> 130. HYC is entitled to a declaration that LP's corporate veil should be pierced so as to assert liability directly against the Barnathan Defendants. The corporate form is a sham or mere instrumentality, and the Barnathan Defendants have failed to observe all necessary corporate formalities, intermingled funds, and used LP as their own personal piggy bank.

[ECF No. 1]. Questions abound, and yet, nowhere in its Complaint does Plaintiff attempt to specify any facts to support the plausibility of this deluge of legal conclusions. Which corporate formalities does Plaintiff believe LP failed to observe? Which LP funds were intermingled with which personal funds of which of the three Barnathan Defendants Plaintiff sued? How did each of the Barnathan Defendants use LP as his own piggy bank?

Even in context, paragraph 130 of Plaintiff's Complaint cannot establish a plausible case for disregarding LP's presumptively legitimate corporate existence. On this subject, Plaintiff's Complaint simply recites archetypical fact patterns when courts find the corporate veil should be pierced. Without substance, however, this legal conclusion fails under Rule 8 and *Twombly/Iqbal*.

As for quantum meruit specifically against the individual Barnathan Defendants, Plaintiff's single-sentence allegation that the Barnathan Defendants "reaped the same benefits individually and are thus liable to HYC" falls well short of adequate pleading under the Federal Rules of Civil Procedure. [ECF No. 1]. Similar to their ineffective veil-piercing allegations, Plaintiff's Complaint fails to articulate genuine facts to explain how, when, or under what circumstances a benefit to LP—a presumptively unique legal entity—constitutes a benefit to any of the Barnathan Defendants **personally**.

Courts routinely disregard these conclusory allegations as incompatible with plausibility pleading standards set forth in *Twombly* and *Iqbal*. *See Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (citing *Iqbal*, 556 U.S. 662, 678 (2009)) ("[W]e disregard bare legal conclusions and naked assertions, affording the presumption of truth only to genuine factual allegations.").

In this case, a list of legal conclusions related to veil-piercing and a single, toss-in allegation that the owners of a corporation allegedly benefitted when the corporation allegedly benefited

simply does not satisfy Federal Rule 8(a). Accordingly, this Court should grant judgment on the pleadings in the Barnathan Defendants' favor as to the equitable claims summarized in Count III and Count V of the Complaint.

> **D.** *Exhibit A to Plaintiff's Complaint nullifies Count IV of Plaintiff's Complaint as against the Barnathan Defendants.*

In just three sentences, Count IV of Plaintiff's Complaint briefly contends that both LP and the Barnathan Defendants failed to pay Plaintiff on an open account. However, Plaintiff fails to allege facts to support the existence of an open account between Plaintiff and the Barnathan Defendants, rather than between Plaintiff and LP. Further, it is clear from the NCBFAA Terms & Conditions of Service contract attached as Exhibit A to Plaintiff's Complaint that contractual privity between these parties exists only between Plaintiff and LP. In other words, according to Plaintiff's own submissions, Plaintiff's allegation that it provided anything to the Barnathan Defendants on an open account cannot be sustained. Therefore, this Court should grant judgment on the pleadings in favor of the Barnathan Defendants on Count IV of the Complaint.

Consistent with federal standards, this Court should grant judgment on the pleadings in favor of the Barnathan Defendants as to all Counts of the Complaint for Plaintiff's failure to plead facts, rather than conclusions, to support its claims against Defendants Joseph Barnathan, Solomon Barnathan, and Abraham Barnathan.

Respectfully submitted,

**EVANS PETREE PC**

/s/ Logan A. Klauss
L. Clayton Culpepper, III (TN 23583)
Logan A. Klauss (TN 34311)
1715 Aaron Brenner Dr., Suite 800
Memphis, Tennessee 38120
Telephone: (901) 525-6781
cculpepper@evanspetree.com
lklauss@evanspetree.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this action.

/s/ Logan A. Klauss
Certifying Attorney