## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| HYC LOGISTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02191-TLP-atc |
| v. | ) | |
| | ) | |
| LOUISE PARIS, LTD, JOSEPH | ) | |
| BARNATHAN, SOLOMON | ) | |
| BARNATHAN, and ABRAHAM | ) | |
| BARNATHAN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO STRIKE, DENYING MOTION FOR SANCTIONS, AND DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

In March 2024, Plaintiff HYC Logistics, Inc. ("HYC") sued Joseph Barnathan, Solomon Barnathan, Albert Barnathan,[1] and Louise Paris, LTD ("LP") (collectively "Defendants"). (ECF No. 1.) HYC claimed breach of contract, fraud, fraudulent inducement, intentional misrepresentation, negligent misrepresentation, unjust enrichment, quantum meruit, sworn account, and declaratory judgment. (*Id.*) The Court dismissed HYC's claims for negligent misrepresentation, "intentional misrepresentation and fraudulent inducement [] based on the alleged misrepresentations the Barnathans made about LP's ability and willingness to pay under the Services Contract and LP's financial condition more broadly," and sworn account. (ECF No. 42 at PageID 210.) HYC then moved for summary judgment on the remaining claims. (ECF

---

[1] Plaintiff mistakenly referred to Albert Barnathan as Abraham Barnathan in the Complaint. (*Compare* ECF No. 1 at PageID 1 *with* ECF No. 57-1 at PageID 317.) The Clerk is respectfully **DIRECTED** to modify the docket to reflect this correction.

No. 49.)  Defendants responded and included affidavits from each of the Barnathan Defendants. (ECF Nos. 57–58.)  HYC moved to strike those affidavits and for sanctions, and Defendants responded with new affidavits, seeking to correct the issues identified by HYC.  (ECF Nos. 62, 65–68.)

For the reasons explained below, the Court **DENIES** the HYC's Motions to Strike and for Sanctions and **DENIES IN PART AND GRANTS IN PART** HYC's Motion for Summary Judgment.

## <u>BACKGROUND</u>

To begin, the Court will take the time to lay out the undisputed facts in this complex dispute and to identify the facts which the Parties dispute.[2]

HYC is a family owned and operated Memphis-based logistics company that provides freight forwarding and customs broker services to both international and domestic companies. (ECF No. 49-2 at PageID 245.)  And HYC contracts with its clients needing import services by using the Terms and Conditions of Services issued by the National Customs Brokers & Forwarders Association of America, Inc. ("NCBFAA").  (ECF No. 1 at PageID 3–4.)  HYC asserts that these are the standard terms in the industry.  (*Id.*)

For clients needing both import and customs clearance services, HYC asserts that it provides "end-to-end services," particularly for imports coming from China.  (*Id.* at PageID 3.)

---

[2] Defendants failed to cite to the record, as required by Rule 56(c)(1)(A), in their Response to Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. (*See* ECF No. 58 at PageID 325–40;) Fed. R. Civ. P. 56(c)(1)(A).  So stating the facts here is harder than is typical.  "'Judges are not like pigs, hunting for truffles' that might be buried in the record."  *Emerson v. Novartis Pharmaceuticals Corp.*, 446 Fed. Appx. 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)).  Defendants made it even harder by filing the "inartfully drafted" first set of affidavits, leading to  their filing a second set of affidavits to clarify the first.  (*See* ECF Nos. 65–67.)

These end-to-end services include "securing cargo containers, securing transport of the cargo
containers by an international shipping concern, receiving the cargo at a U.S. port, clearing
customs, and then either storing or transporting the goods by ground transport to either the client
or a destination provided by the client." (*Id.*)

I.      **LP, the Services Contract, and the Indemnity**

        HYC provided these types of services to Defendant LP.  The Individual Defendants
here—Joseph Barnathan, Albert Barnathan, and Solomon Barnathan—are the "majority, if not
exclusive, owners of LP and both control and operate LP." (*Id.* at PageID 4.)  Furthermore, each
of the Barnathans "is an officer, director, or executive with LP." (*Id.*)  Solomon Barnathan is
LP's Chief Executive Officer and Joseph Barnathan is LP's Vice President. (*Id.*) Solomon
Barnathan owns all of LP's shares.  (ECF No. 57-3 at PageID 323.)

        On November 15, 2022, HYC and LP executed a contract, the NCBFAA Terms and
Conditions of Services ("Services Contract" or "Contract").  (ECF No. 49-2 at PageID 245.)  In
the Services Contract, HYC agreed to provide, freight, forwarding, and customs brokerage
services for the goods LP planned to purchase and transport from a manufacturer in China. (*Id.*)
The Parties agree that "[t]he Contract was signed by Joseph Barnathan, Vice President of LP, on
behalf of LP." (*Id.* at PageID 246; ECF No. 58 at PageID 326.)  As HYC explains, "[u]nder the
Contract, HYC provided services to LP on account which LP agreed to promptly pay upon
receipt of HYC's monthly invoice." (ECF No. 1 at PageID 4.)  The Contract further required LP
"to pay its bills and all 'expenses of collection and/or litigation, including reasonable attorney[s']
fee[s].'" (ECF No. 49-2 at PageID 246.)  LP admitted that it executed the Services Contract and
is bound by its terms. (*Id.*)

And so HYC claims it began providing services to LP under the Services Contract. (ECF No. 1 at PageID 4.) HYC explained how the business relationship functioned.

> After LP ordered goods from a Chinese manufacturer, LP would contact HYC and HYC would coordinate the transport of the containers from China to the United States. Upon arrival at the port in the United States, the Bills of Lading would be released to HYC - evidencing that LP had paid the manufacturer in full - and HYC would release the goods to LP by transporting the containers to LP's warehouse.

(ECF No. 49-2 at PageID 246.)

In December 2022, the month after LP and HYC signed the Services Contract, HYC became concerned that LP had not paid the Chinese manufacturer for some goods in containers HYC was importing and that the manufacturer would not release the Bills of Lading to HYC. (*Id.*) HYC told LP that it could not release the goods without Bills of Lading because that would create financial liability for HYC and its international affiliates. (*Id.*) But LP assured HYC that they could release the goods to LP without the Bills of Lading, as LP told HYC that it had worked out payment arrangements. (*Id.* at PageID 247.) To convince HYC to release the containers to LP without the Bills of Lading, LP entered into an indemnity agreement with HYC ("Indemnity"). (*Id.*) Under the Indemnity, "LP agreed to fully indemnify and reimburse HYC for any and all damages, fees, and/or costs, associated with HYC releasing the goods to LP without receipt of the Bills of Lading." (*Id.*) LP admits that it executed the Indemnity and is bound by it. (*Id.*) For the next twelve months, HYC imported and transported goods for LP without issue. (*Id.*)

## II.    Detail Fashion Ltd.

In 2023, LP ordered goods from Detail Fashion Ltd. ("Detail Fashion"), a textile manufacturer located in China. (*Id.*) LP hired HYC to handle the transport of goods that LP ordered from Detail Fashion. (*Id.*) HYC then hired HECNY Group ("HECNY"), a company in China, to facilitate the export of the goods. (*Id.* at PageID 248.) HECNY's role was "to receive

4

the goods from Detail Fashion, deliver the goods to the port in Shanghai, load the goods onto a container ship, and transport the goods to Los Angeles." (*Id.*)

But, when the goods arrived at the port in Los Angeles, HYC discovered that LP had not fully paid Detail Fashion and "that Detail Fashion had not released the Bill of Lading." (*Id.*) In fact, LP failed to pay Detail Fashion $791,000.91. (*Id.*) Even so, "[t]he Barnathan Defendants demanded that HYC release the goods," and HYC did. (*Id.*)

Because LP had not paid Detail Fashion, Detail Fashion sued HECNY in Chinese court and alleged that HECNY should not have released the goods without the Bills of Lading. (*Id.*) The Chinese court then froze around $700,000.00 of HECNY's funds to secure LP's unpaid balance to Detail Fashion. (*Id.*) In response, HECNY focused on HYC. (*Id.*) "HECNY demanded that HYC pay Detail Fashion $791,009.90 for the cost of goods sold to LP, plus an additional $23,812.00 in legal fees incurred by Detail Fashion and another $20,607.00 in legal fees incurred by HECNY." (*Id.* at PageID 248–49.) In addition, "HECNY held in port and/or suspended delivery of HYC's other customers' containers in route from China." (*Id.* at PageID 249.) HECNY also threatened legal action and "sought to terminate its business relationship with HYC." (*Id.*)

HYC then communicated directly with LP asking it either to make the required payment or to perform under the Indemnity, both of which LP refused to do. (*Id.*) Neither Detail Fashion nor HECNY would release or resolve any legal claims until LP paid its debt to Detail Fashion in full. (*Id.*) "The Barnathan Defendants told HYC that LP was not in a financial position to satisfy the debt or perform under the [Indemnity]." (*Id.* at PageID 250.) HYC was then facing a hard choice either to pay off LP's debt and liability or to defend the claims against it. (*Id.*) LP also admitted that it failed to pay HYC for its services in the amount of $447,288.28. (*Id.*) LP

owed Detail Fashion $791,009.90 for past due invoices.  (*Id.*)  And Detail Fashion claimed legal

fees of $23,813.00, while HECNY claimed legal fees of $20,607.72.  (*Id.*)

### III.    Settlement Agreement

HYC took out a loan and paid Detail Fashion $791,009.90 to cover LP's debt.  (*Id.*)

HYC wired the funds to Detail Fashion on December 28, 2023.  (*Id*).  Joseph Barnathan denies

any knowledge of the terms of HYC's loan or that he received any documents supporting HYC's

claim of taking out a loan.  (*See* ECF No. 57-2 at PageID 321; ECF No. 66 at PageID 482.)

Before HYC made that payment, on December 26, 2023, Joseph Barnathan, while acting on

behalf of LP, allegedly negotiated the terms for and agreed to enter into a settlement agreement

with HYC ("Settlement Agreement").  (ECF No. 1 at PageID 10; ECF No. 49-3 at PageID 260–

61.)  During a conference call with HYC that same day, Joseph Barnathan allegedly agreed to

three things—that they were liable for the debt, that they would sign the Settlement Agreement,

and that they would make payments under that agreement.  (ECF No. 49-3 at PageID 261)

Likewise, HYC asserts that each of the Barnathans agreed to guarantee LP's payment under the

Settlement Agreement.[3]  (*Id.*)

With its verified Complaint and Motion for Summary Judgment, HYC attached an

unsigned, undated document entitled "Settlement Agreement."  (ECF No. 1-5; ECF No. 49-6.)

HYC asserts that this document memorializes the Settlement Agreement that HYC, LP, and the

Barnathans agreed to.  (ECF No. 49-2 at PageID 252.)  According to the written Settlement

Agreement, LP agreed to pay HYC a total of $1,238,288.00 by making monthly installments

starting in January 2024 and ending in March 2024.  (ECF No. 49-6 at PageID 274.)

---

[3] As the Complaint states, "As part of the Settlement Agreement, HYC required, and each of the
Barnathan Defendants agreed to be, guarantors for the repayment obligation, jointly and
severally."  (ECF No. 1 at PageID 10.)

That total covers the money HYC paid to Detail Fashion on LP's behalf.  (*Id.*)  It also includes the $447,288.28 that LP still owed HYC under the Services Contract.  (*Id.*)  The Settlement Agreement contains this guaranty provision ("Guaranty"): "In order to induce HYC to enter into this Agreement with LP, the Guarantors unconditionally guarantee the payment of all sums due under the Agreement on the part of LP … and agree to be jointly and severally liable for LP's payments and prompt performance under this Agreement."  (*Id.* at PageID 275.)  And it lists the Barnathans as the guarantors.  (*Id.* at PageID 273.)

HYC alleges that "[o]n December 29, 2023, Counsel for LP emailed HYC stating that the Settlement Agreement was signed by LP and that LP and the Barnathan Defendants agreed to perform thereunder."  (ECF No. 1 at PageID 10; *see* ECF No. 62-2.[4])  And Defendants allegedly made three installment payments under the Settlement Agreement, although these payments were less than the amounts set forth in the Settlement Agreement.  (ECF No. 49-2 at PageID 252–53.)  For instance, they paid $220,000.00 on December 28, 2023, $75,000.00 on January 22, 2024, and $70,000 on February 20, 2024.[5]  (*Id.*)  LP made six other payments for $25,000, less than they allegedly agreed to in the payment plan.  (*Compare* ECF No. 49-3 at PageID 262–63 *with*

---

[4] Typically the Court does not consider items in the record filed after the motion for summary judgment.  But Plaintiff has attached an email chain to its Motion to Strike (ECF No. 62-2.), which they purport to be the communications between the Parties during their negotiations of the Settlement Agreement.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Since Defendants did not contest the accuracy of the emails in their response to the Motion to Strike, but instead filed the second set of Barnathan Affidavits which implicitly accept the accuracy of the emails and because the emails are otherwise permissible to support a factual position under Federal Rule of Civil Procedure 56, the Court will consider the emails in its review of the Motion for Summary Judgment.  *See* Fed. R. Civ. P 56.  That said, the emails do not change the outcome.

[5] According to the Settlement Agreement, the first payment should have been $260,000 followed by seven payments of $100,000 and then smaller payments afterward.  (ECF No. 1-5 at PageID 36.)

ECF No. 49-6 at 274.)[6]  LP and the Barnathans made no more payments to HYC after May 10,

2024, despite HYC's request that they do so.  (*Id.*)

Even though they made several payments, Defendants refused to provide signed copies of

the Settlement Agreement.  (*Id.* at PageID 254.)  HYC further asserts that, rather than turning

over signed copies of the Settlement Agreement, Defendants tried to renegotiate the terms of the

settlement.  (*Id.* at PageID 253.)  The parties agree that LP owes HYC $772,297, but the

Barnathans deny that they owe any money.  (*Id.* at PageID 254; *See* ECF Nos. 65–67.)

Defendants deny that they ever entered the Settlement Agreement.  (*See* ECF Nos. 65–

67.)  They admit that they were aware of the ongoing negotiations with HYC; but they deny

signing standalone personal guaranties, a confession of judgment, or a loan agreement.  (ECF

No. 66 at PageID 481–82.)  But they do not deny signing a proposed version of the Settlement

Agreement, which their former counsel was holding, pending HYC's compliance with certain

conditions, including HYC's representative signing the Agreement.  (*Id.*)

According to the Barnathan Defendants, when they realized that the proposed Settlement

Agreement had a personal guaranty clause, they directed their former attorney not to provide

HYC with the signed proposed Settlement Agreement.  (*See* ECF Nos. 65–67.)  Both Solomon

and Albert deny taking any part in the negotiations apart from LP's delegate, Joseph Barnathan,

keeping them up to date.  (*Id.*)  The Barnathan Defendants deny any knowledge of the loan that

HYC took out so it could pay off LP's debt and they deny entering into the Settlement

Agreement on December 26, 2023, or any later date.  (*See* ECF Nos. 57-1, 57-2, 57-3.)

---

[6] They made these payments on March 22, April 2, April 5, April 12, May 3, and May 10 of
2024.  (ECF No. 49-3 at PageID 253.)

The Court will now set out the relevant legal standards and then analyze HYC's Motions to Strike, for Sanctions, and for Summary Judgment.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c)(4) requires affidavits to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." If an affidavit does not meet one of these requirements, it is subject to a motion to strike. *See Nationwide Recovery, Inc. v. City of Detroit, Michigan,* 163 F.4th 977, 987 (6th Cir. 2026); *Jordan v. Caruso*, No. 06–CV–10979, 2011 WL 4502266, at * 2 (E.D. Mich. Aug. 4, 2011).

Courts grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). And courts construe all reasonable inferences in favor of the nonmoving party when they consider a motion for summary judgment. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party shows there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In arguing that a genuine issue exists, "the nonmoving party must present significant probative evidence that

will reveal that there is more than some metaphysical doubt as to the material facts." *Wiley v. City of Columbus, Ohio*, 36 F.4th 661, 667 (6th Cir. 2022) (internal quotations and citing references omitted). Put differently, "in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citing references omitted). Indeed, Federal Rule of Civil Procedure 56(c)(1)(A) requires that the nonmoving party cite specific places in the record to show a genuine dispute of fact exists. Fed. R. Civ. P 56(c)(1)(A) (emphasis added). Even more, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Likewise, if the nonmoving party "fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof," then the moving party is entitled to "judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc.* 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)). But if the Court finds there is a genuine dispute over material facts, then it must deny summary judgment, and the case should proceed to trial. *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020). Now the Court will turn to its analysis of HYC's Motions.

## ANALYSIS

### I.    Motion to Strike Affidavits

HYC moved to strike the first set of Barnathan Affidavits because "each of those affidavits contains demonstrably false statements" in violation of the requirements of Rule

56(c)(4).[7]  (ECF No. 62-1 at PageID 445.)  The Parties rely on cases that prohibit parties from

submitting affidavits that contradict earlier deposition testimony, or sham affidavits.  *See e.g.*,

*Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006); *Kennett-Murray Corp. v.

Bone*, 622 F.2d 887 (5th Cir. 1980); *Trustees of Plumbers and Steamfitters Loc. Union No. 43

Health and Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023 (E.D. Tenn. 2008) (applying the

sham affidavit doctrine to determine whether affidavits contradicted by later depositions should

have been disregarded).  The facts here do not line up cleanly with the situations in the cases the

Parties cite.  Those cases deal with situations in which an affidavit is offered after and in

contradiction to earlier deposition testimony or in which the affidavit is contradicted by later

deposition testimony.  And the courts were determining whether to strike the later or

contradictory affidavits.  Here we have two sets of affidavits, no deposition testimony, and the

claim that the first set of affidavits contradict earlier statements made by the Barnathans and their

counsel to HYC during the negotiation of the Settlement Agreement.  The Court is therefore

considering whether to strike affidavits that amount to the Barnathan Defendants' first instance

of sworn testimony.

HYC claims that many statements in the first set of Barnathan Affidavits are false.  These

statements reference (1) whether the Barnathans signed and entered the Settlement Agreement,

(2) whether they authorized their attorney to provide HYC with the signed Settlement

Agreement, (3) whether they were aware of the conversations between their attorney and HYC,

(4) whether they personally agreed to guarantee any loan with HYC, (5) whether the Barnathans

---

[7] HYC seeks to strike these affidavits because of Paragraphs 2, 3, 4, 6, 7, 8, and 9 in Albert
Barnathan's First Affidavit; Paragraphs 2, 3, 4, 5, 8, 9, 10, 11, and 12 in Joseph Barnathan's First
Affidavit; and Paragraphs 2, 3, 4, 6, and 7 in Solomon Barnathan's First Affidavit.  (ECF No. 62-
1 at PageID 453–54.)  HYC argues these paragraphs contain false statements and should be
stricken from the Court's consideration of HYC's Motion for Summary Judgment.  (*Id.*)

were aware of the loan that HYC took out to pay off LP's outstanding balance to Detail Fashion and HECNY.  (*See* ECF Nos. 57-1, 57-2, 57-3, 62-1, 65–67.)

The Parties rely on two district court cases from this circuit: *Barnes v. SRI Surgical Exp.*, Inc., No. 1:09-CV-204, 2012 WL 1059935 (E.D. Tenn. Mar. 28, 2012) and *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948 (S.D. Ohio 2000).  (*See* ECF No. 62-1 at PageID 454; ECF No. 68 at PageID 489.)  In *Barnes*, the district court struck an affidavit after the later deposition of the affiant confirmed the affidavit's suspected falsity.  *Barnes*, 2012 WL 1059935 at *12–15.  In *Reddy*, the district court refused to strike two affidavits that were contradicted by other evidence such that they were suspected of omitting material facts.  137 F. Supp. 2d at 955.  The court reasoned that the defendant in that case could question the veracity of the affidavits through the cross-examination of the witnesses at trial.  *Id.*

The Court finds that the facts here are closer to those in *Reddy* than those in *Barnes*.  The initial Barnathan affidavits conflict with the emails HYC attached to its Motion to Strike, but they do not conflict with any earlier sworn testimony or the later affidavits from the Barnathans. The Court therefore has competing versions of events from the parties, which is typical for litigation.  But it does not have two sources of contradictory sworn testimony from one party. The question of the credibility of the Barnathan Affidavits is one for the trier of fact.  The Court therefore **DENIES** Plaintiff's Motion to Strike.  The Court will consider both sets of affidavits when it evaluates Plaintiff's Motion for Summary Judgment.

## II.    Motion for Sanctions

Rule 56(h) allows a court to sanction a party that submits an affidavit or declaration in support of or in opposition to a summary judgment motion in bad faith or solely for delay.  Fed. R. Civ. P. 56(h).  "Bad faith" occurs "where affidavits contained perjurious or blatantly false

12

allegations or omitted facts concerning issues central to the resolution of the case." *Sutton v. U.S. Small Bus. Adm.*, 92 Fed. Appx. 112, 118 (6th Cir.2003) (quoting *Jaison, Inc. v. Sullivan*, 178 F.R.D. 412, 415–16 (S.D.N.Y. 1998)). "Awarding sanctions under Rule 56(g) is 'rare' and the conduct involved generally must be 'egregious.'" *Abdelkhaleq v. Precision Door of Akron*, 653 F.Supp.2d 773, 787 (N.D. Ohio 2009).

Since the Court determined in the section above that the first set of Barnathan Affidavits contradicted no other sworn testimony, it also declines to find that they were submitted in bad faith or solely for delay. The Court lacks information from which to conclude that the affidavits contained perjurious or blatantly false allegations or omitted facts related to issues central to the case, especially given the clarification of the second set of Barnathan Affidavits. This is not one of the rare or egregious situations warranting sanctions, and the Court therefore **DENIES** HYC's Motion for Sanctions under Rule 56(h). The Court would note, though, that it agrees with Defendant Joseph Barnathan that the first set of affidavits were "inartfully drafted," to say the least.

## III.   Summary Judgment

### A.   Breach of the Service Contract and Indemnity by LP

Defendants concede that LP breached both the Services Contract and the Indemnity. (*See* ECF No. 57 at PageID 294.) And Defendants concede that LP owes HYC $791,000.90—the amount LP owed Detail Fashion—and HYC is seeking $772,297.00, which includes a claim for the legal fees that HYC paid to Detail Fashion on behalf of LP. (*Id.*; ECF No. 49-2 at 254.) HYC is also seeking damages and attorney's fees. (ECF No. 49-1 at PageID 242–43.)

Defendants agree that summary judgment should be entered against LP, but as to liability only because HYC has not offered enough proof to support summary judgment on damages.

(ECF No. 57 at PageID 294–95.)  Defendants rely on the requirement under Tennessee law that

attorney's fees must be reasonable and supported by an affidavit of the lawyer who performed

the work.  (*Id.* (citing *Wright v. Wright*, No. M2007-00378-COA-R3-CV, 2007 WL 4340871,

at*5 (Tenn. Ct. App. Dec. 12, 2007)).)  As to LP, HYC seeks summary judgment as to liability

for the breach of the Services Contract and Indemnity only.  (ECF 49-1 at PageID 235.)

HYC seeks attorney's fees without providing the requisite affidavit from its attorneys.

And the Parties disagree about the amount LP owes HYC under the Services Contract and

Indemnity.  HYC is also seeking additional damages.  The Court finds there is no genuine

dispute over any material facts about whether LP breached the Services and Contract and

Indemnity and therefore **GRANTS** summary judgment for HYC as to liability only on those

claims.  The question of damages will be left for trial.

### B.    Breach of the Settlement Agreement

HYC's final contract claim is that both LP and the Barnathans have entered into and then

breached the Settlement Agreement.  (ECF No. 1 at PageID 11–12.)  HYC notably argued for

summary judgment against only the Barnathan Defendants for breach of the Settlement

Agreement.  (ECF No. 49-1 at PageID 235–37.)  Their final request, though, asks for summary

judgment against LP "on its claims for [] Breach of Contract . . . ." (*Id.* at PageID 243.)  Because

that request may include the claim against LP for breach of the Settlement Agreement, the Court

will analyze the Motion for Summary Judgment for breach of the Settlement Agreement as it

relates to all Defendants.

The elements for breach of contract are: "(1) the existence of an enforceable contract, (2)

nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of

the contract." *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct.

App. 2019).  The Court's role when interpreting an unambiguous contract is to determine the intention of the parties based on the language of contract.  *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011).  A contract need not be reduced to writing; under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced."  *Johnson v. Central Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962).

This means that a signed writing is sometimes unnecessary for a contract to be binding on the parties.  *See Remco Equip. Sales, Inc. v. Manz*, 952 S.W.2d 437, 439 (Tenn. App. 1997) (finding a single transaction insufficient to create a course of dealing).  A contract that has been reduced to writing may be binding on a party that has not signed it if that party shows consent to its terms.  *S. Motor Car Co. v. Talliaferro*, 14 Tenn. App. 276, 280 (Tenn. App. 1931). A party can show consent through its course of dealings with the other party.  *Remco*, 952 S.W.2d, at 439.  And a party is estopped from denying that a meeting of the minds occurred sufficient to bind them to a contract when they have performed under the contract and made payments in conformity with the terms of the contract.  *R.J. Betterton Management Serv., Inc. v. Whittemore*, 769 S.W.2d 214, 216 (Tenn. App. 1989).  "[W]hether a meeting of the minds occurred is a question of fact."  *Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 807 (Tenn. App. 2015) (quoting *Harvey v. Turner*, No. M2014–00368–COA–R3–CV, 2015 WL 1451702, at *6 (Tenn.Ct.App. Mar. 26, 2015), *perm. app. denied* (Tenn. Aug. 14, 2015)) (internal quotation marks omitted).

"Whether an agency exists is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as

they in fact exist under their agreement or acts." *White v. Revco Discount Drug Centers, Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000) (quoting *McCay v. Mitchell,* 463 S.W.2d 710, 715 (1970)) (internal quotation marks omitted). Agents act with either actual or apparent authority. "An agent's actual authority consists of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess." *Savage v. City of Memphis*, 464 S.W.3d 326, 333 (Tenn. App. 2015) (internal quotation marks omitted). "[Apparent authority] is power held by the agent to affect a principal's legal relations with third parties when a third party reasonably believes the [agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Savage*, 464 S.W.3d at 333 (internal quotation marks omitted).

The Court finds here that there remain genuine disputes of material facts over the question of whether HYC, LP, and the Barnathans ever had "a meeting of the minds of the parties in mutual assent to the terms" of the contract. *Johnson v. Central Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962). HYC insists that, during the conference call on December 26, 2023, Joseph Barnathan agreed, on behalf of LP and the other Barnathans, to the terms of the Settlement Agreement. He also allegedly stated that they would sign the Agreement when it was formalized in writing. What is more, they assert that, after exchanging draft versions of the final Agreement, Joseph Barnathan instructed his attorney to provide HYC with the Settlement Agreement, including the personal guaranty, signed by all of the Barnathans. After receiving partial payment from Defendants, HYC took out the loan to pay Detail Fashion, only to have Defendants attempt to renegotiate the Settlement Agreement and to insist that they had never agreed to it.

Defendants claim that they were in negotiations with HYC the entire time. And they assert that, while they were prepared to enter the Settlement Agreement, their last-minute realization that HYC included a personal guaranty caused them to stop and direct their attorney to hold the copy of the Agreement that they had signed. They also deny that the payments they made to HYC related to the Settlement Agreement. They insist therefore that there are genuine factual disputes over whether there was a meeting of the minds enough to bind them to the Settlement Agreement, whether their payments show that they consented to the Agreement, and whether their attorney had the actual or apparent authority to bind them to the Agreement.

The Court agrees with Defendants. While HYC claims that Defendants revealed their intent to sign the Agreement, said they signed the Agreement, and made payments under the Agreement, Defendants assert that they never agreed to the Settlement Agreement. Both Parties support their contentions with affidavits. (Compare ECF No. 49-2 with ECF Nos. 57-1, 57-2, 57-3, 65–67.) The Court is then left with questions of fact over what authority the Barnathan's gave their attorney, when they gave it, and whether and when they revoked any authorization to provide HYC the signed Settlement Agreement. See *Savage*, 464 S.W.3d at 334 (reversing a grant of summary judgment because there were insufficient facts to establish that an attorney had apparent authority to settle a case when their client never expressly confirmed to the other party that the attorney had that authority).

Comparing Uri Silver's Affidavit and the emails attached to HYC's Motion to Strike with the second set of Barnathan Affidavits, the Court finds that there are questions of material fact over whether the Barnathan's ever understood themselves to be signing a final version of the Settlement Agreement. And questions remain about whether both Solomon Barnathan and Albert Barnathan were less aware of the specifics than Joseph, given Joseph's larger role in

negotiating the Agreement.  Because Defendants made payments to HYC after the drafting of the Settle Agreement and the amounts of those payments differ from the payment plan as listed in the Agreement, there remains a question of material fact whether Defendants' conduct shows assent to the contract or not.  *See R.J. Betterton Management Serv., Inc.*, 769 S.W.2d at 216 (finding a meeting of the minds "[w]here the parties performed under the agreement for an extended period of time and [the defendant] made payments to [plaintiff] *conforming to the terms of the agreement*") (emphasis added).

Given the disputed questions of material fact here, the Court **DENIES** HYC's Motion for Summary Judgment for its claims that LP and the Barnathans breached the Settlement Agreement.

### C.    Fraudulent Inducement and Intentional Misrepresentation

HYC also moves for summary judgment against the Barnathan Defendants for their alleged fraudulent inducement and intentional misrepresentation as it relates to their negotiations over the Settlement Agreement.  (ECF No. 49-1 at PageID 237–40.)  This claim essentially boils down to the allegation that Joseph Barnathan and his former attorney agreed to the Settlement Agreement on behalf of LP and the Barnathans during the conference call on December 26, 2023, and later email chain and then, reneged after securing HYC's payment of LP's debts and its promise to forgo litigation.  Defendants explicitly deny this. (ECF Nos. 57-1, 57-2, 57-3.)

18

Fraudulent inducement[8] and intentional misrepresentation[9] occur when a defendant "made a false statement of material fact that is designed to induce the plaintiff to rely on it." *Thompson v. Bank of America*, 773 F.3d 741, 752 (6th Cir. 2014) ("intentional misrepresentation," "fraudulent misrepresentation," "fraud," and "fraudulent inducement" are essentially synonymous). A future promise can support a claim for intentional misrepresentation when it is "made with the intent not to perform." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978). The same is true for fraudulent inducement because a fraudulent inducement claim "may be based on . . . false promise made without the intention to perform." *Omorfia Ventures, Inc. v. Posh Bridal Couture*, LLC, 2020 WL 5500483 at *6 (M.D. Tenn. Sep. 11, 2020). [10] The questions of the intent of the defendant and of the reliance of the plaintiff on

---

[8] There are five elements of fraudulent inducement in Tennessee.

> [T]he defendant (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) that the plaintiff reasonably relied on the statement, and (5) that this reliance resulted in an injury.

*Thompson*, 773 F.3d at 751.

[9] Intentional misrepresentation has six elements.

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Thompson*, 773 F.3d at 751.

[10] As in its Order on the Motion for Judgment on the Pleadings, the Court once again notes that some federal courts in Tennessee treat promissory fraud, which is referenced by both Parties here, as a theory of liability under which a plaintiff may bring fraudulent inducement and intentional misrepresentation claims. But other courts treat promissory fraud as its own claim. (ECF No. 42 at Page ID 197 (citing *Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V.*, 685 F. Supp. 3d 654, 672 (E.D. Tenn. 2023); *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006); *Brown v. Woodbury Auto Grp. LLC*, 591 F. Supp. 3d 282, 294 (M.D. Tenn. 2022); *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1332 (E.D. Tenn. 2016); *Omorfia Ventures, Inc. v. Posh Bridal Couture, LLC*, No. 3:19-CV-00794,

the misrepresentation are questions of fact. *Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 916 (Tenn Ct. App. 2014); *Biancheri v. Johnson*, No. M2008-00599-COA-R3-CV, 2009 WL 723540 at *8 (Tenn. Ct. App. M.S., filed Mar. 18, 2009).

There are genuine disputes of material facts that preclude summary judgment here. The Parties disagree over whether Defendants made any misrepresentations or false promises, whether Joseph Barnathan and his counsel intended to deceive or induce HYC's reliance, and whether HYC's reliance on Defendants' statements was reasonable. For example, HYC insists that Joseph Barnathan agreed to the Settlement Agreement on the December 26, 2023, conference call (ECF No. 49-2 at PageID 251,) but Joseph Barnathan explicitly denies this. (ECF No. 66 at PageID 481–82.) The Court cannot grant summary judgment on either the fraudulent inducement or intentional misrepresentation claims when the Parties dispute something so fundamental to these claims. The Court therefore **DENIES** summary judgment on HYC's fraudulent inducement and intentional misrepresentation claims.

### D.    Unjust Enrichment and Quantum Meruit

HYC also seeks summary judgment on its unjust enrichment and quantum meruit claims. But it only argues for its unjust enrichment claim. (ECF No. 49-1 at PageID 240–41.) In essence, HYC argues that whether the Settlement Agreement is a binding contract between the

---

2020 WL 5500483, at *6 (M.D. Tenn. Sept. 11, 2020)).) And the Tennessee Supreme Court has not clarified this issue in the interim. Plaintiff appears to view promissory fraud as a theory through which to assert fraudulent inducement and intentional misrepresentation. (See ECF No. 49-1 at Page ID 239.) Defendants do not specify. Having reviewed the law on this point, the Court finds that whether promissory fraud is a theory or a standalone claim, a claimant may assert both intentional misrepresentation and fraudulent inducement based on false future promises made with the intent not to perform. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978); *Loew v. Gulf Coast Dev., Inc.*, No. 01-A-019010CH00374, 1991 WL 220576 at *7 (Tenn. App. Nov. 1, 1991). The nature of promissory fraud in Tennessee law, while unclear, is not essential to the decision here. The genuine disputes of material fact identified above justify the Court's decision here.

Parties, it has conferred over $1.2 million in benefits to Defendants by paying off their debts and

providing them with services that remain unpaid.  (*Id.*)  And to allow Defendants to retain this

benefit would be unjust.  (*Id.*)  Defendants choose to argue against the quantum meruit claim.

(ECF No. 57 at PageID 307.)  So the parties address different claims here.

   "Under an unjust enrichment theory, courts impose a contractual obligation where there

is 'no contract between the parties or the contract has become unenforceable or invalid,' and the

defendant will be unjustly enriched unless the court imposes a quasi-contractual obligation."[11]

*Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 304–05 (Tenn. 2024) (citing

*Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596).  An unjust enrichment claim has three

elements: (1) "[a] benefit conferred upon the defendant by the plaintiff," (2) "appreciation by the

defendant of such benefit," and (3) "acceptance of such benefit under such circumstances that it

would be inequitable for him to retain the benefit without payment of the value thereof."  *Id.*

(citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)).  "The

most significant requirement of an unjust enrichment claim is that the benefit to the defendant be

unjust."  *Id.* (citing *Freeman Indus., LLC*, 172 S.W.3d at 525).

---

[11] In *Family Trust*, the Tennessee Supreme Court clarified that unjust enrichment claims and
quantum meruit claims have different elements.  *Fam. Tr. Servs. LLC,* 693 S.W.3d at 305.  It
explicitly endorsed the three-element test from *Freeman Industries* for unjust enrichment claims.
*Id.*  While the lack of a contract is not an element under the *Freeman Industries* test, the Supreme
Court of Tennessee took great care to emphasize that unjust enrichment is still a quasi-
contractual remedy that courts impose in the absence of an enforceable contract.  *Id.* at 304.  The
Court therefore reads *Family Trust* to require claimants to bring unjust enrichment claims only
with no underlying enforceable contract over the same subject matter.  Other differences between
the two claims are apparent from the different tests.  For example, unjust enrichment claims
require the defendant "appreciate" that they received a benefit, while quantum meruit claims do
not.  And quantum meruit claims require the party seeking recovery to prove that it provided
valuable goods and services to the defendant, and unjust enrichment claims do not.

A quantum meruit claim under Tennessee law is similar to unjust enrichment.  A plaintiff

must plead: (1) there is no existing, enforceable contract between the parties covering the same

subject matter; (2) the party seeking recovery proves that it provided valuable goods or services;

(3) the party to be charged received the goods or services; (4) the circumstances indicate that the

parties to the transaction should have reasonably understood that the person providing the goods

or services expected to be compensated; and (5) the circumstances demonstrate that it would be

unjust for a party to retain the goods or services without payment.  *Doe v. HCA Health Servs. of*

*Tennessee, Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001) (citing *Swafford v. Harris*, 967 S.W.2d 319,

324 (Tenn.1998)).

Once again, there remain genuine disputes as to material facts on HYC's unjust

enrichment and quantum meruit claims.  Since both claims hinge on the absence of a contract

covering the same transaction, HYC's Motion for Summary Judgment on these claims against

LP fails.  As noted above, LP is contractually obligated to pay for HYC's services and to

indemnify them for any litigation that results under the Services Contract and Indemnity.  HYC's

Count I turns on this obligation, and the undisputed facts show that LP is liable to pay HYC for

services rendered and litigation costs incurred.  (ECF No. 49-2 at PageID 246–47.)

As for the Barnathans, the unjust enrichment claim requires that they were aware they

received the benefit.  And the Barnathans deny knowledge of the loan that HYC took out to pay

off LP's debts.  (*See* ECF Nos. 57-1, 57-2, 57-3.)  So the Barnathans dispute material facts about

their knowledge of the benefit of at least the loan.  Further, and as Defendants suggest, the

question of how much, if at all, the Barnathan's benefitted from HYC's payment of the LP's

debts and from the services HYC provided without payment is unclear.  What is more, HYC's

position seems to collapse into the veil piercing inquiry below.  How much the Barnthans

personally benefitted from HYC's conduct or received from the services provided by HYC, are

unresolved factual questions that preclude summary judgment against the Barnathans for these

claims.  *See Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 725, 770 (W.D. Tenn. 2022).

###    E.    Piercing the Corporate Veil

HYC lastly seeks summary judgment for its claim that the Court should pierce LP's

corporate veil and allow it to assert liability directly against the Barnathan Defendants.  (ECF

No. 49-1 at PageID 241–42.)  It asserts that the Barnathan Defendants exercise such control over

LP that its debts are effectively their debts.  (*Id.*)  Defendants counter by insisting that HYC has

not shows enough undisputed facts related to their control and operation of LP to prevail on

summary judgment for this claim.  (ECF No. 57 at PageID 311–15.)

As the Tennessee Supreme Court held, a claim to pierce the corporate veil has three

elements:

(1)    Control over the entity, not only of finances, but of policy and business
practice in respect to the transaction under attack, so that the entity, as to
that transaction, had no separate mind, will, or existence of its own;

(2)    The control must have been used to commit fraud or wrong, to perpetuate
the violation of a statutory or other positive legal duty, or to commit a
dishonest and unjust act in contravention of a third party's rights; and

(3)    The control and fraud, wrong, violation, or injustice must have proximately
caused the injury or unjust loss complained of.

*Youree v. Recovery House of E. Tennessee, LLC*, 705 S.W.3d 193, 211 (Tenn. 2025) (citing

*Continental Bankers Life Insurance Co. of the South v. Bank of Alamo* ("*Continental Bankers*"),

578 S.W.2d 632 (Tenn. 1979)).

When deciding whether the claimant has shown the three elements, courts may look to

the eleven *Allen* factors.  *Id.*; *see Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D.

Tenn. 1984). These *Allen* factors are:

23

(1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

See *Allen*, 584 F. Supp. at 397.  The Court is mindful that there is a "presumption of corporate separateness" and that piercing the corporate veil is "the exception, not the rule." *Youree*, 705 S.W.3d at 207–08 (citing *Edmunds v. Delta Partners*, L.L.C., 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012)).  And it agrees with Defendants that "[t]he burden is on the party seeking to pierce the corporate veil to prove facts sufficient to warrant such an action."  (ECF No. 57 at PageID 312 (citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991); *PI, Inc. v. Beene*, No. 1:12-cv-350, 2014 WL 11455975, at *8 (E.D. Tenn. Aug. 18, 2014)).)

HYC has not proved enough undisputed facts here to justify summary judgment.  The Court accepts as undisputed that the Barnathans are the majority, if not exclusive, owners of LP and that they control and operate LP.  The Court also accepts that each of the Barnathans serves as an executive, officer, or director of LP and that Solomon Barnathan owns one hundred percent of the shares of LP.  The Court even accepts that LP and the Barnathans employ the same attorney.  For all that the Court still cannot conclude on this record, that the Barnathans have used their control of LP "to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights." *Youree*, 705 S.W.3d at 211.

HYC has shown few undisputed facts or evidence related to many of the *Allen* factors. For example, the Court cannot determine whether there was a failure to collect paid in capital,

whether LP was grossly undercapitalized, whether LP issued stock certificates, whether they used the same office and business location, whether LP was used as an instrumentality of one or more of the Barnathans, whether the Barnathans diverted corporate assets to the detriment of creditors or manipulated assets and liabilities, whether the Barnathans used LP as a subterfuge in illegal transactions, whether the Barnathans formed and used LP to transfer existing liability of another, and whether the Barnathans failed to maintain arm's length relationships among related entities.  The Court accepts as undisputed that the Barnthans own and operate LP, they use the same attorney as LP, and that LP breached two contracts with HYC.  Those facts are not enough to defeat the presumption of corporate separateness at the summary judgment stage.  *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812 (Tenn. App. 2012) (reversing a decision to pierce the corporate veil on a breach of contract claim where the only evidence in support was that the president and controlling shareholder of a company had made assurances that the company would honor the contract).  The Court therefore **DENIES** summary judgment as to HYC's claim to pierce LP's corporate veil.

## CONCLUSION

For the reasons explained above, the Court **DENIES** the HYC's Motions to Strike and for Sanctions and **DENIES IN PART AND GRANTS IN PART** HYC's Motion for Summary Judgment.

**SO ORDERED**, this 9th day of March, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE